# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| ANTHONY C. MARTIN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FORT WAYNE POLICE )<br>DEPARTMENT, OFFICER KINSEY, )<br>OFFICER ELMER, OFFICER CLINE, and )<br>SERGEANT STRAUSBERGER, )<br>)<br>Defendants. ) | CAUSE NUMBER: 1:09-CV-74-TLS |

## OPINION AND ORDER

This matter is before the Court on a Motion for Summary Judgment and Designation of Evidence [ECF No. 47], filed by the Defendants on July 1, 2010, and on a Motion to Strike Portions of Plaintiff's Affidavit [ECF No. 53], filed by the Defendants on August 9, 2010.

## PROCEDURAL BACKGROUND

On March 23, 2009, Anthony C. Martin, the Plaintiff, who is proceeding pro se in this matter, filed a verified Complaint [ECF No. 1] pursuant to 42 U.S.C. § 1983. He sued four Defendants from the Fort Wayne Police Department: Officer Gregory Kinsey; Officer Robert Elmer; Officer Matthew Cline; and Sergeant Thomas Strausborger.[1] He also named the Fort Wayne Police Department as a Defendant. His Complaint describes a traffic stop that occurred on March 20, 2009. He alleges that police illegally searched his car, violated his First, Fourth, and Sixth Amendment rights, and harassed and retaliated against him. He also claims "vindictive

---

[1] According to the Affidavit of Sergeant Thomas Strausborger, the sergeant's name is spelled "Strausborger," not "Strausberger" as the Complaint spells it.

demeanors" and violation of the "color blue" or perhaps the color of law. (ECF No. 1 at 3.) On May 27, the Defendants filed an Answer [ECF No. 8] denying the allegations made against them and asserting affirmative defenses.

On July 1, 2010, the Defendants filed a Motion for Summary Judgment and Designation of Evidence [ECF No. 47] and a Memorandum of Law in Support [ECF No. 49]. The Defendants designated as evidence the Affidavit of Officer Gregory Kinsey, the Affidavit of Officer Matthew Cline, the Affidavit of Sergeant Thomas Strausborger, the Affidavit of Officer Robert Elmer, and a certified copy of the chronological case summary in *State of Indiana v. Anthony C. Martin*, cause no. 02D04-0903-IF-003427. The Defendants also filed a Notice of Filing Motion for Summary Judgment [ECF No. 48], which advised the Plaintiff of his obligation to respond to the Defendants' Motion for Summary Judgment. On July 26, the Plaintiff filed a "Reply" [ECF No. 50] (hereinafter "Response") and an Affidavit of Anthony C. Martin [ECF No. 51]. On August 9, the Defendants filed a Reply [ECF No. 52] as well as a Motion to Strike Portions of Plaintiff's Affidavit [ECF No. 53] and a Memorandum in Support [ECF No. 54]. The Plaintiff has not responded to the Motion to Strike.

**SUMMARY JUDGMENT STANDARD**

The Federal Rules of Civil Procedure state that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] Fed. R. Civ. P. 56(a). A motion should be granted so

---

[2] A new version of Federal Rule of Civil Procedure 56 went into effect on December 1, 2010. The purpose of the revisions to the Rule was to improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts. Fed. R. Civ. P. 56, Committee Notes for 2010 Amendments. The amendments were not intended to effect

long as no rational fact finder could return a verdict in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Id.* at 249–50; *Poer v. Astrue*, 606 F.3d 433, 439 (7th Cir. 2010). To the extent that a verified complaint makes factual assertions consistent with the requirements for affidavits, such as whether the affiant has personal knowledge of the assertions, it may be treated as an affidavit that qualifies as evidence in opposition to summary judgment. *See Ford v. Wilson*, 90 F.3d 245, 246–47 (7th Cir. 1996).

The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* N.D. Ind. L.R. 56.1(a) (stating that the movant must provide a "Statement of Material Facts" that identifies the facts that the moving party contends are not genuinely disputed). In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed in Rule 56 to designate specific material facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000); N.D. Ind. L.R. 56.1(b)(2) (directing that a response in opposition to a motion for summary judgment must include "a section labeled 'Statement of Genuine Disputes' that identifies the material facts that the party contends are genuinely disputed so as to make a trial necessary"). Rule 56 also states:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A)   citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

---

continuing development of the decisional law construing and applying the standard for granting summary judgment, which remains unchanged. *See* Fed. R. Civ. P. 56(a) & Committee Notes for 2010 Amendments.

     stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

 (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

  Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *see Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1009 (7th Cir. 1999). *See also Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (noting the often stated proposition that "summary judgment cannot be used to resolve swearing contests between litigants"). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598–99. "Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008).

  Because the Plaintiff is proceeding pro se, his filings are entitled to liberal construction and are "not held to the stringent standards expected of . . . lawyers." *McCormick v. City of Chi.*, 230 F.3d 319, 325 (7th Cir. 2000). However, even as a pro se litigant, the Plaintiff is required to follow the Federal Rules of Civil Procedure and the District Court's Local Rules, and he is not excused from complying with his responsibilities as a plaintiff. *See Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008) (stating that although "courts are required to give liberal construction to pro se pleadings[,] . . . it is also well established that pro se litigants are not excused from compliance with procedural rules"); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) (stating that "the Supreme Court has made clear that even pro se litigants must follow

rules of civil procedure").

## FACTS ALLEGED IN THE VERIFIED COMPLAINT

In his Complaint, which is signed under penalty of perjury, the Plaintiff alleges the following facts:

> On 3/20/09 at or about 2:15-2:20 p.m., I was driving eastbound on Lake Street when I noticed an unmarked police car following me. I kept driving east on Lake when I noticed a fully marked police car join in on following me but actually got behind me. I drove about a block further when I noticed that his lights were on ordering me to pull over. I pulled over and shut off the truck getting my driver's license and registration for the officer when he got up to the window. When the officer approached he was laughing stating "Mr. Martin, Mr. Martin, I got you for speeding. I asked him how fast was I going. He said that he didn't have a radar and for me to shut the fuck up. He was to ask all the questions." He looked in the backseat and saw my daughter in her car seat so he took my driver's license and registration and walked back to his car which then like 4 officers had arrived. I was still wrote a speeding ticket which before I was able to leave I was asked to search my truck which I said no and Officer Elmer and Officer Kinsey became very vulgar and unprofessional telling me that they could do what they wanted and would make my life a living hell for me. One of the officers stated the camera, the camera, sergeant, like he was alerting them that it was being recorded. I was let go which it wasn't over 30 minutes later and I was pulled over again by the black unmarked car this time and a red skylark or shaped car and two fully police cars, which I was ordered out of the truck, handcuffed and placed in the back of the red vehicle while my truck got searched and a K-9 got ran through it. I had to sit there and hear my daughter screaming because she didn't know the officers holding her while my truck got destroyed and searched for no reason.[3]

(Compl. 2–3, ECF No. 1.)

## FACTS PUT FORWARD BY THE DEFENDANTS

On March 20, 2009, Officer Kinsey was on duty as a Fort Wayne police officer and was

---

[3] These factual allegations are copied from the Complaint with some minor corrections of spelling, punctuation, and other minor errors made for readability purposes.

5

in full police uniform in a marked police squad car. Officer Kinsey was driving westbound on Lake Avenue in an area that has two westbound lanes when he saw a green Blazer traveling in the same direction accelerating and changing lanes without signaling to move around traffic. As he followed the Blazer, Officer Kinsey paced it going forty-five miles per hour in an area where the posted speed limit is thirty miles per hour. Officer Kinsey activated his overhead lights to initiate a traffic stop. The driver of the Blazer, the Plaintiff, made a right turn and stopped on Dearborn Street.

Officer Kinsey approached the Plaintiff, who was the only occupant of the Blazer. The Plaintiff immediately asked Officer Kinsey why he was pulled over and stated that he had done nothing wrong. Officer Kinsey asked for the Plaintiff's driver's license and registration. Officer Kinsey ran a computer check of the Plaintiff and learned that he was a convicted felon and a known resistor and that he had been armed in the past. Based on this information, Officer Kinsey radioed dispatch for back-up. Officer Cline responded to the call for back-up. Officer Elmer also heard the call for back-up, but when he heard that another officer was responding, he decided not go to the location of the traffic stop.

When Officer Cline arrived, Officer Kinsey was in the squad car writing a speeding ticket, and the Plaintiff was sitting in the Blazer. Officer Cline stood near the front of Officer Kinsey's car and heard the Plaintiff request that a supervisor come to the scene. Officer Cline informed Officer Kinsey of the Plaintiff's request, and Officer Cline radioed dispatch for a supervisor. Sergeant Strausborger arrived at the scene and accompanied Officer Kinsey as he gave the Plaintiff a speeding ticket for driving forty-five miles per hour in a thirty mile per hour zone. The Plaintiff complained to Sergeant Strausborger that Officer Kinsey did not use radar to

determine his speed and that he should not be issued a ticket. Sergeant Strausborger explained to the Plaintiff that pacing a vehicle is an acceptable way to determine if a driver is speeding, that they were not going to debate the ticket at the scene, but that the Plaintiff could dispute it in court.

Officer Kinsey asked the Plaintiff if the police could search his car for weapons for officer safety. The Plaintiff declined to give permission, and no search was conducted. No officer requested or directed that the Plaintiff exit his car, and the Plaintiff did not exit his car during the traffic stop. After Sergeant Strausborger told the Plaintiff that he was free to leave the scene, the Plaintiff quickly departed.

On July 14, 2009, an infraction bench trial was held in the Allen Superior Court in cause number 02D04-0903-IF-003427, regarding the March 20, 2009, charge of exceeding the maximum lawful speeds in violation of Indiana Code § 9-21-5-2. The Plaintiff appeared at the trial and presented evidence. After the bench trial, the presiding magistrate judge entered an infraction judgment against the Plaintiff for speeding. On August 26, 2009, the Plaintiff paid the fine.

## FACTS STATED IN THE PLAINTIFF'S AFFIDAVIT

The Plaintiff maintains that he was not speeding or changing lanes without a turn signal and that he did not violate any city ordinance on March 20, 2009. The Plaintiff was not the sole occupant of the Blazer; he had his young daughter in the back seat. After being pulled over, he was ordered out of the vehicle, handcuffed, and detained in the back seat of a squad car "for over a long period of time." (Martin Aff. 1, ECF No. 51.) Officers Kinsey, Cline, and Elmer, and

Sergeant Strausborger searched his vehicle while the Plaintiff was detained. Officer Elmer held the Plaintiff's daughter as she screamed and cried. The Plaintiff called his attorney when he was pulled over. He did not resist, show any violent behavior, or pose a threat to the officers.

## DISCUSSION

The Plaintiff brought this civil action against the Fort Wayne Police Department (not the City of Fort Wayne) and four city police officers pursuant to 42 U.S.C. § 1983. He has alleged both federal and state law claims. The Defendants seek summary judgment on all claims.[4] The parties have submitted evidentiary materials that present two very different accounts of what transpired on March 20, 2009.

### A.     The Defendants' Motion to Strike

The Defendants have moved to strike many of the statements included in the Plaintiff's Affidavit in support of his version of events on grounds that they are not relevant, that they contradict facts in evidence, and that they are speculative, conclusory, or vague and ambiguous.[5] At the summary judgment stage, the Court does not evaluate the relative veracity of each party's facts, provided the claims are not implausible on their face, even if the one-sidedness of the

---

[4] In their Motion for Summary Judgment and supporting materials, the Defendants treat the Plaintiff's allegation of "color of law violations" as a separate claim. The Court understands the Plaintiff's reference in his Complaint to "color of law violations" to be a redundant invocation of § 1983 terminology and not a separate, free-standing claim.

[5] In his Response, the Plaintiff asks that the Court strike various paragraphs of the Affidavits submitted by the Defendants. He argues that the Affidavits include vague, conclusory, and self-serving statements, and that various paragraphs are not supported by evidence in the record. As the Court evaluates the facts and legal issues in this summary judgment proceeding, the Court will consider the evidence presented by the Plaintiff and the Defendants under the applicable rules.

allegations causes the Court to raise a brow. *See Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 761–62 (7th Cir. 2006). The Court "do[es] not vouch for the truth of the facts, but rather merely use[s] them to determine whether the case can be resolved as a matter of law." *Id.* at 762 (citation omitted). Rule 56(c)(4) requires that an affidavit used to support or oppose a summary judgment motion "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent on the matters stated." At the summary judgment stage in litigation, a court may rely on all admissible evidence, even if the evidence is not presented in admissible form. *Stinett v. Iron Works Gym/Exec. Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002).

The Defendants do not take issue with the Plaintiff's personal knowledge or his competence to testify to the matters stated in the Affidavit, and many of the Plaintiff's statements present evidence that would be admissible at trial. Some of the statements the Defendants contend are not relevant are background facts that need not be stricken. The Court is able to sift through the evidence and to consider each piece under the applicable federal rules. As the Court addresses the legal issues presented by the Defendants' Motion for Summary Judgment and analyzes the facts under the governing procedural and substantive law, the Court will consider the admissibility of the Plaintiff's statements, determine whether there are any irrelevant, inadmissible, conclusory, or speculative assertions that should be disregarded, and then the Court will handle them accordingly. To the extent that any of the Plaintiff's statements would be inadmissible if he were to offer them at trial, the Court will not consider them. Consequently, there is no need to strike any part of the Plaintiff's Affidavit, and the Court will deny the Defendants' Motion to Strike.

9

### B. The Defendants' Motion for Summary Judgment

#### 1. *Claims Against Fort Wayne Police Department*

The Defendants argue that Defendant Fort Wayne Police Department should be dismissed because it is not a suable entity. Section 1983 imposes liability on any "person" who, while acting under color of state law, deprives an individual of federally protected rights. 42 U.S.C. § 1983. Municipalities and other local government units are included among the persons to whom § 1983 liability applies. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978) (holding that a local government is liable under § 1983 for its policies that cause constitutional deprivations). A "municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id.* at 691. The Supreme Court instructed that local government liability under § 1983 "is dependent on an analysis of state law." *McMillian v. Monroe County*, 520 U.S. 781, 786 (1997).

Under Indiana law, a "municipal corporation" is a "unit, . . . or other separate local governmental entity that may sue and be sued." Ind. Code § 36-1-2-10. A "municipality" is a "city or town," Ind. Code § 36-1-2-11, and "'unit' means county, municipality, or township," Ind. Code § 36-1-2-23. Indiana law provides that a "city legislative body shall, by ordinance passed upon the recommendation of the city executive, establish the executive departments that it considers necessary to efficiently perform the administrative functions required to fulfill the needs of the city's citizens." Ind. Code § 36-4-9-4(a). "The head of each city department or agency is under the jurisdiction of the executive." Ind. Code § 36-4-9-4(b). Among the departments that Indiana law authorizes cities to establish is a department of public safety. Ind.

Code § 36-4-9-4(c)(1). Pursuant to Indiana Code § 36-4-9-4, the City of Fort Wayne established executive divisions of the city, including the Division of Public Safety, which is headed by the Director of Public Safety and is responsible for the activities of the police department, the fire department, emergency medical services, animal control, and communications of the city. Fort Wayne, Ind. Code of Ordinances § 30.01(A)(2). The Court has found no provision of the Indiana Constitution that establishes a municipal chief of police as an independently elected official or a municipal police department as a separate legal entity. To the contrary, the city executive (i.e., the mayor) appoints the chief of the police department under Indiana law. *See* Ind. Code § 36-4-9-6(b)(5). Likewise, the Court has found no Indiana statute that grants a municipal police department the capacity to sue or be sued.

For these reasons, the Court finds, under Indiana law, that the Fort Wayne Police Department has no separate legal existence apart from the City of Fort Wayne, that the Police Department is a division or arm of the municipality, and that the Fort Wayne Police Department is not a suable entity under § 1983. *See Martin v. Fort Wayne Police Dep't*, Cause No. 1:09-CV-48, 2010 WL 4876728, at *2–3 (N.D. Ind. Nov. 23, 2010); *see also Sow v. Fortville Police Dep't*, — F.3d —, 2011 WL 477050, at *4 (7th Cir. Feb. 11, 2011) (stating that "the Indiana statutory scheme does not grant municipal police departments the capacity to sue or be sued" and citing *Martin*). For these reasons, the Court will grant the Defendants' Motion for Summary Judgment as to Defendant Fort Wayne Police Department and will dismiss this party from the case.

**B.    First Amendment and Sixth Amendment**

In his Complaint, the Plaintiff claims that the Defendants violated his First Amendment

and Sixth Amendment rights. The Defendants request summary judgment on these claims, arguing that the Plaintiff's Complaint sets forth no allegations showing how the Defendants violated his constitutional rights. In his Response, the Plaintiff does not specifically address these two claims or the Defendants' arguments for summary judgment on these claims.

The Plaintiff has not developed any factual basis for these claims. The First Amendment, which is applicable to the states through the Fourteenth Amendment, prohibits Congress from making laws respecting an establishment of religion, prohibiting the free exercise of religion, abridging the freedom of speech or of the press, or abridging the right of the people to peaceably assemble and to petition the Government for a redress of grievances. U.S. Const. amend. I. The Sixth Amendment provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI. Various rights in the Sixth Amendment have been made applicable to the states.

The Defendants have shown that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law on the Plaintiff's claims that they violated his First and Sixth Amendment rights. "A party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). The Plaintiff has failed to meet this burden with respect to any alleged First or Sixth Amendment violations, and the Defendants are entitled to summary

judgment on these claims.

C.     **Fourth Amendment**

The Defendants ask the Court to enter summary judgment on the Plaintiff's Fourth Amendment claims. The Plaintiff claims that the police violated his Fourth Amendment rights on March 20, 2009, when they stopped him for speeding and changing lanes without signaling. He contends that he was not speeding, changing lanes without signaling, or violating any city ordinance. He also claims that the police violated his Fourth Amendment rights when they ordered him out of his vehicle, handcuffed him, placed him in the back of a police car, and searched his vehicle. .

The Defendants contend that they did not violate the Plaintiff's Fourth Amendment rights. They argue that Officer Kinsey had a reasonable suspicion supported by articulable facts to stop the Plaintiff's vehicle and, in the alternative, that he had probable cause to stop the Plaintiff for speeding. The Defendants also argue that his illegal seizure claim is barred based upon his speeding conviction and *Heck v. Humphrey*, 512 U.S. 477 (1994). They contend that reasonable suspicion would have justified requesting that the Plaintiff exit the vehicle, handcuffing him, and temporarily detaining him in the back of a squad car, but they aver that they never did any such things.

The Fourth Amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. When police officers stop an automobile and detain the occupants briefly, the stop amounts to a seizure within the meaning of the Fourth Amendment.

*Whren v. United States,* 517 U.S. 806, 809–10 (1996); *see also United States v. Arvizu*, 534 U.S. 266, 273 (2002) (stating that the Fourth Amendment's protection against "unreasonable searches and seizures" extends to "brief investigatory stops of persons or vehicles"). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren*, 517 U.S. at 810; *United States v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005) ("Probable cause exists when 'the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense.'") (quoting *United States v. Cashman*, 216 F.3d 582, 586 (7th Cir. 2000)). Any ulterior motive an officer may have for making the stop is irrelevant. *United States v. Bass*, 325 F.3d 847, 850 (7th Cir. 2003) (citing *Whren*, 517 U.S. at 813). "A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *United States v. Taylor*, 596 F.3d 373, 376 (7th Cir. 2010) (quoting *Ill. v. Caballes*, 543 U.S. 405, 407 (2005), and *Muriel*, 418 F.3d at 725).

The Court has before it evidentiary materials suggesting two very different stories as to the alleged initial seizure, continued detention, and search of the Plaintiff's vehicle on March 20, 2009. These materials manifest factual disputes regarding whether Defendant Kinsey had a reasonable suspicion or probable cause to stop the automobile that the Plaintiff was driving. There are also factual disputes about how long the police detained the Plaintiff, whether the Plaintiff was ordered out of his truck, handcuffed, and placed in the back of a police car, whether the police searched his truck, and which officers were present. The Defendants have presented evidence that the Plaintiff was speeding and changing lanes without signaling, was never asked to leave his vehicle, never handcuffed, and was never placed in the back of a squad car. The

14

Defendants have also presented evidence that they never searched the Plaintiff's vehicle. The Plaintiff states, under penalty of perjury, that he was not speeding or changing lanes without signaling, that he was ordered out of his vehicle, that he was handcuffed, and that the police detained him in the back of a squad car while Officers Kinsey, Cline, and Elmer and Sergeant Strausborger searched his vehicle. The Court cannot resolve these factual disputes at the summary judgment stage.

The Defendants argue that, even if the Plaintiff's vehicle was searched as he claims, they would have been justified in searching his car for officer safety. Officers may order occupants to exit a vehicle "'as a matter of course'" during a traffic stop. *Muriel*, 418 F.3d at 726 (quoting *Maryland v. Wilson*, 519 U.S. 408, 410 (1997)). An officer who has a reasonable suspicion that a motorist may be armed and may be able to gain immediate control of weapons may conduct a protective search of the passenger compartment without a warrant. *United States v. Arnold*, 388 F.3d 237, 239 (7th Cir. 2004) (citing *Michigan v. Long*, 463 U.S. 1032, 1049 (1983)). In doing so, the officer must have "specific, articulable facts which, in combination with inferences to be drawn from those facts, reasonably warrant the intrusion." *United States v. Fryer*, 974 F.2d 813, 819 (7th Cir. 1992) (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968), and *Long*, 463 U.S. at 1049).

In support of their claim that Defendant Kinsey had a reasonable suspicion that the Plaintiff was armed, the Defendants point to a notation in a database that the Plaintiff was a known resistor and a convicted felon and had been armed in the past. The Defendants also point to the Plaintiff's careless driving and his argumentativeness to support the claimed reasonable suspicion. Nothing about the nature of his driving (which the Plaintiff disputes) or his assertion that he should not have been pulled over for speeding suggests that he was carrying a weapon.

15

The notation that he was a known resistor and a convicted felon and had been armed in the past, without any other indicators that he was presently armed, does not warrant an intrusion into his vehicle. For example, there was no evidence that the Plaintiff was suspected of recently being involved in drug or gang-related activity, made furtive or suspicious hand movements inside the car, was located in a high crime area, was unreasonably nervous, or attempted to conceal an object inside the car or inside his clothing. Considering the disputed facts in this case, the Court will deny the Defendants' Motion for Summary Judgment as to their argument that a search of the Plaintiff's vehicle would have been warranted based upon a concern for officer safety.

Additionally, the Defendants rely heavily on *Heck v. Humphrey*, 512 U.S. 477 (1994).[6] *Heck* holds that a plaintiff in an action under 42 U.S.C. § 1983 may not pursue a claim for relief when its success would necessarily imply the invalidity of a criminal conviction or sentence, unless that conviction has been set aside by appeal, collateral review, or pardon. *Heck*, 512 U.S. at 487; *see also Gilbert v. Cook*, 512 F.3d 899, 900 (7th Cir. 2008). *Heck*, however, is inapplicable here. The Seventh Circuit has instructed:

> Fourth Amendment claims for false arrest or unlawful searches accrue at the time of (or termination of) the violation. *Wallace v. Kato*, 549 U.S. 384 (2007). Even if no conviction could have been obtained in the absence of the violation, the Supreme Court has held that, unlike fair trial claims, Fourth Amendment claims as a group do not necessarily imply the invalidity of a criminal conviction, and so such claims are not suspended under the *Heck* bar to suit.

*Dominguez v. Hendley*, 545 F.3d 585, 589 (7th Cir. 2008).

For these reasons, the Court will deny the Defendants' Motion for Summary Judgment as to the Plaintiff's Fourth Amendment claims regarding the initial seizure of the Plaintiff, his

---

[6] The Defendants did not develop any argument based upon issue preclusion (collateral estoppel), which is an affirmative defense that they would ordinarily have to plead and prove. *See Taylor v. Sturgell*, 553 U.S. 880, 907 (2008).

continued detention, and the search of his vehicle.

## D. Qualified Immunity Defense

The Defendants claim that they are entitled to qualified immunity because the Plaintiff has not presented evidence that the Defendants' actions patently violated the Plaintiff's constitutional rights or identified a closely analogous case that would have put them on notice that their actions violated the Plaintiff's constitutional rights. The doctrine of qualified immunity shields government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010). When evaluating a claim of qualified immunity, courts consider (1) whether the facts make out a deprivation of a constitutional right, and (2) whether the right was clearly established at the time of the defendant's alleged violation. *Id.* Courts may address these two questions in the order they believe best suits the circumstances of the particular case at hand. *Id.* Qualified immunity is a fact-intensive analysis. *See Ienco v. City of Chi.*, 286 F.3d 994, 1001 (7th Cir. 2002). In considering whether a constitutional violation occurred, courts examine the facts in a light most favorable to the party asserting an injury. *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009). "When the qualified immunity inquiry cannot be disentangled from disputed facts, the issue cannot be resolved without a trial." *Id.*

As explained above, the Court has before it evidentiary materials that call into dispute the facts put forward by the Defendants, and consequently genuine issues of material fact exist as to the alleged deprivations of the Plaintiff's Fourth Amendment right to be free from an unlawful

17

search and seizure. The qualified immunity inquiry cannot be disentangled from the disputed facts concerning whether the Plaintiff was lawfully stopped and whether he was detained in a squad car while police searched his vehicle. Viewing the facts in the light most favorable to the Plaintiff, who is the party asserting an injury, the Plaintiff's claims that the Defendants deprived him of constitutional rights are supported by evidence in the record. Consequently, the Court finds that the doctrine of qualified immunity does not warrant summary judgment in favor of the Defendants on the Plaintiff's § 1983 claims, and the Defendants' Motion for Summary Judgment will be denied as to qualified immunity.

### E. State Law Claims

The Plaintiff claims that the Defendant's seizure of him and search of his vehicle constitute retaliation and harassment. The Defendants construe these allegations as an attempt to assert tort claims pursuant to state law, and they argue that any such state law claims are barred because the Plaintiff failed to comply with the notice provisions of the Indiana Tort Claims Act (ITCA), citing Indiana Code §§ 34-13-3-8 and 34-13-3-13. The ITCA provides that "a claim against a political subdivision is barred unless notice is filed with: (1) the governing body of that political subdivision; and (2) the Indiana political subdivision risk management commission created under IC 27-1-29; within one hundred eighty (180) days after the loss occurs." Ind. Code. § 34-13-3-8(a); *see also Brown v. Alexander*, 876 N.E.2d 376, 380 (Ind. Ct. App. 2007) (discussing the ITCA notice requirements). The ITCA governs tort claims against governmental entities and public employees. *City of Bloomington Utils. Dep't v. Walter*, 904 N.E.2d 346, 349 (Ind. Ct. App. 2009).

In their argument for summary judgment based upon the Plaintiff's apparent failure to comply with the ITCA notice requirements, the Defendants focus upon the political subdivision, not the individual officers. Because issues of fact exist regarding whether the officers were acting within the scope of their employment, the Court will deny the Defendants' Motion for Summary Judgment as to the Plaintiff's state law claims.

**F.     Punitive Damages**

The Defendants argue that summary judgment is warranted on any claim for punitive damages by the Plaintiff because there is no evidence that the Defendants' conduct was motivated by evil motive or intent or that their conduct involved reckless or callous indifference to the Plaintiff's federally protect rights. The Seventh Circuit has provided the following instructions regarding punitive damages when Fourth Amendment rights are implicated:

> [T]he Fourth Amendment does not only protect people accused of crimes. The law recognizes that law-abiding citizens can sue and recover general (or presumed) damages for a Fourth Amendment violation, even without proof of injury. Additionally, punitive damages are recoverable under Section 1983 even in the absence of actual damages where the jury concludes that the defendant's conduct was motivated by evil intent or involved reckless or callous indifference to the federally-protect rights of others. In the end, it will be for the jury to decide the proper quantum of relief, if any, for [the defendant's] violation of the [plaintiffs'] Fourth Amendment rights.

*Siebert v. Severino*, 256 F.3d 648, 655 (7th Cir. 2001) (citations, quotation marks, and alteration omitted); *see also Smith v. Wade*, 461 U.S. 30, 56 (1983) ("[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to federally protected rights of others.").

19

Considering the facts in dispute and the evidence before the Court and viewing the facts in a light most favorable to the Plaintiff, the evidence is such that a reasonable jury could return a verdict for the Plaintiff on a claim for punitive damages. In his verified Complaint, the Plaintiff has claimed harassment, retaliation, and vindictiveness by the Defendant officers and has alleged violations of his federally-protected rights. Consequently, the trier of fact will have to determine this and other questions of fact, and the Court will deny the Defendants' Motion for Summary Judgment on the Plaintiff's claim for punitive damages.

## CONCLUSION

For the reasons stated above, the Court DENIES the Defendants' Motion to Strike Portions of Plaintiff's Affidavit [ECF No. 53] and GRANTS IN PART and DENIES IN PART the Defendants' Motion for Summary Judgment [ECF No. 47]. The Court ORDERS the Clerk of this Court to DISMISS WITH PREJUDICE Defendant Fort Wayne Police Department from this case. The Court GRANTS summary judgment in the Defendants' favor on the Plaintiff's First Amendment and Sixth Amendment claims, but DENIES summary judgment on the Plaintiff's Fourth Amendment and state law harassment and retaliation claims.

SO ORDERED on February 28, 2011.

                                           s/ Theresa L. Springmann
                                          THERESA L. SPRINGMANN
                                          UNITED STATES DISTRICT COURT